**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No. 1:25-cv-01847-WJM-KAS

ABBVIE INC.; ALLERGAN, INC.; DURATA THERAPEUTICS, INC.; ABBVIE PRODUCTS LLC; PHARMACYCLICS LLC; and ALLERGAN SALES, LLC,

*Plaintiffs*,

v.

PHILIP WEISER, in his official capacity as Attorney General of the State of Colorado; and KRISTEN WOLF, RYAN LEYLAND, PATRICIA EVACKO, AVANI SONI, MICHAEL SCRUGGS, ALEXANDRA ZUCCARELLI, and JAYANT PATEL, in their official capacities as Members of the Colorado State Board of Pharmacy,

*Defendants*.

---

**ABBVIE'S RESPONSE IN OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO STRIKE**

---

Plaintiffs AbbVie Inc., Allergan, Inc., Durata Therapeutics, Inc., AbbVie Products LLC, Pharmacyclics LLC, and Allergan Sales, LLC (collectively, "AbbVie") hereby oppose the State's motion to strike AbbVie's experts' testimony. *See* Dkt. No. 38 ("Mot."). The Court should allow Dr. Amitabh Chandra and Dr. Alice Chen to testify at the soon-to-be rescheduled evidentiary hearing.[1]

[1] AbbVie's counsel conferred with the State regarding substitute dates for the evidentiary hearing formerly scheduled for August 1. Although AbbVie is available August 11–12, the State indicated that it is not available during any of the windows

## INTRODUCTION

The State's motion to strike AbbVie's experts is baseless. AbbVie has two expert witnesses whose testimony will help prove that Colorado's S.B. 71 does not serve the public interest or help needy Coloradans. That is an issue at the heart of both the merits (whether S.B. 71 serves a valid "public use" under the Fifth Amendment) and the preliminary injunction analysis (whether S.B. 71's immediate enforcement serves the public interest). It is also an issue the State explicitly contested in its opposition to AbbVie's preliminary injunction motion. *See* Dkt. No. 33 at 11–13, 15. AbbVie thus has every right to support its position on that factual dispute with expert testimony—whether appended to a reply brief or served independently.

Contrary to the State's suggestion, AbbVie disclosed its experts promptly. An inspection of this lawsuit's timeline makes clear that AbbVie has moved with speed, urgency, and transparency—particularly with regard to its experts. AbbVie affirmatively stated on July 2 that it may elicit testimony from two expert witnesses at an upcoming evidentiary hearing, depending on what issues the State chose to contest in its then-unfiled response brief. Dkt. No. 31. And AbbVie disclosed those expert opinions at the earliest opportunity upon learning the State *did* contest those issues. The State thus cannot show that AbbVie violated even the "spirit" of the disclosure rules, let alone the rules themselves. Nor can the State identify any prejudice from the timing of AbbVie's expert disclosures, especially now that the August 1 hearing has been postponed.

---

suggested by the Court. Accordingly, AbbVie and the State are still coordinating about later dates. *See* Ex. 1 (Email Thread).

Ultimately, the State's objection distills to a complaint not about AbbVie's conduct, but about the demands of the preliminary injunction AbbVie seeks to litigate. Preliminary injunction hearings necessarily require flexibility given the compressed timeline and correspondingly relaxed procedures. That is no surprise: The challenged law is set to take effect in just over a week, and AbbVie made clear weeks ago that it sought an evidentiary hearing on the merits of its motion. *See* Dkt. No. 31. Yet the State has ignored AbbVie's exigent circumstances and rebuffed all of AbbVie's efforts to compromise. It even refused AbbVie's offer to make both experts available for August 1 depositions in Denver. Instead, because the State wants a problem rather than a solution, it insists on pressing this facially meritless motion. The Court should reject that obvious interference.

## ARGUMENT

### I. AbbVie Did Not Waive Its Ability To Proffer Expert Testimony By Attaching Reports To A Reply Brief.

To start, the State wrongly contends that AbbVie "waived" the opportunity to proffer expert testimony by attaching expert reports to its reply brief. Mot. at 4–5. In so arguing, the State cites cases for the general proposition that courts often decline to consider new issues or arguments raised for the first time in a reply brief. *See, e.g.*, *Home Design Servs., Inc. v. B&B Custom Homes*, 509 F. Supp. 2d 968, 971 (D. Colo. 2007); *Hill v. Kemp*, 478 F.3d 1236, 1251 (10th Cir. 2007). Multiple problems infect that reasoning.

***First***, as a threshold matter, it is unclear why AbbVie's decision to attach expert reports to a reply brief has anything to do with whether those experts can testify at an evidentiary hearing. The State cites no cases or rules requiring expert reports to be attached to or discussed in any brief at all, let alone an opening brief. The State's waiver

cases are thus inapposite. The better question is whether the State has an opportunity to review the experts' materials (and lodge expert challenges if necessary) before the experts actually testify. As discussed below, the State here plainly does—and has suffered no prejudice.

***Second***, and in any event, AbbVie did *not* raise any new issues or arguments in its reply brief when it attached its expert reports. Rather, the expert reports provide additional support for AbbVie's position on an issue that AbbVie raised in its opening brief and that the State contested in its response brief: Whether, by requiring manufacturers to provide additional 340B discounts by transferring drugs to unlimited contract pharmacies, S.B. 71 benefits needy patients or otherwise promotes the public interest. *See* Dkt. No. 7 at 3–4, 11–12, 15; Dkt. No. 33 at 12–13, 15. The outcome of that factual dispute is key to the merits of AbbVie's takings claim and the balancing of the equities under the preliminary injunction framework.

The State cannot pretend that such a dispute does not exist, or that it is immaterial to AbbVie's preliminary injunction motion. Its response brief stated as fact that contract-pharmacy limitations like AbbVie's "caused covered entities dependent on contract pharmacies to become unable to serve patients in need." Dkt. No. 33 at 3 (citing a different case's controversial factual conclusion). It then opposed AbbVie's takings claim on the ground that S.B. 71 supposedly bears "an obvious connection to multiple public interests." *Id.* at 12–13. And on the equities, the State claimed that AbbVie "cannot show that patients do not benefit from covered entities' use of contract pharmacies"—referencing "evidence" from a different lawsuit "demonstrating how use of contract

pharmacies can benefit patients." *Id.* at 15 (citing *AbbVie Inc. v. Fitch*, 2024 WL 3503965, at *10–11 (S.D. Miss. July 22, 2024)). To be clear, discovery has proceeded apace in the Mississippi *Fitch* litigation since the decision the State cites, disputing just such issues as these. *See, e.g.*, *Fitch*, No. 1:24-cv-184, Dkt. Nos. 41–58 (subpoena notices). The State cannot now complain at AbbVie's rebutting those claims with expert evidence.

AbbVie's expert evidence squarely addresses that disputed issue. AbbVie asked Dr. Chandra "to empirically investigate whether additional 340B profits"—the self-described aim of Colorado's law, *see* S.B. 71 § 6-29-102—"are used to increase charity care, reduce bad debt, or improve patient care outcomes at hospitals participating in the 340B program." Dkt. No. 36-1 at 5. In fact, Dr. Chandra's report explicitly discusses the State's response brief in describing the basis for his research assignment. *Id.* at 4. Similarly, AbbVie asked Dr. Chen to investigate how the 340B Program "has evolved over time in Colorado," particularly whether the recent expansion in 340B contract pharmacies in the state has focused on needy communities. Dkt. No. 36-2 at 3–5. She also conducted a literature review on "whether the growth in the 340B Program has been directed towards vulnerable, low-income patient populations, and associated with increased safety-net engagement by covered entities and their contract pharmacies." *Id.* at 3. The experts ultimately concluded that the proliferation of contract-pharmacy arrangements, and the accompanying rise in 340B revenue for covered entities and pharmacies, does not meaningfully help patients or focus on needy communities. Both experts' conclusions rebut the State's position that S.B. 71 promotes the public interest

in mandating such contract-pharmacy arrangements. And the expert opinions accordingly support AbbVie's takings and equities arguments.

At bottom, AbbVie's expert evidence concerns the same factual disputes the State pressed in its response brief. Attaching the reports to AbbVie's reply brief hardly deprived the State of an opportunity to make its point. But if the Court disagrees, it can remedy any perceived prejudice by allowing the State to file a sur-reply addressing expert-related points. AbbVie would not oppose such relief.

## II. AbbVie Timely Disclosed Its Experts, And The State Cannot Show Any Prejudice From The Timing Of Disclosure.

The State next asks the Court to strike AbbVie's experts as an "automatic sanction" for failing to "timely comply" with "disclosure requirements." Mot. at 5 (analogizing to Fed. R. Civ. P. 37(c)(1)). This line of attack, too, suffers from several obvious flaws.

***First***, AbbVie undisputedly did *not* violate any disclosure requirements. As the State itself acknowledges, Federal Rule of Civil Procedure 26(a)(2)'s rigid disclosure requirements do not apply to preliminary injunction proceedings. Mot. at 5. Even if they *did* apply, AbbVie fully complied with Rule 26(a)(2). So the State cannot identify a single rule or order that AbbVie actually violated—it claims only that AbbVie acted "inconsistent with the spirit and purpose" of the rules. *See id.* at 4. Accordingly, the harsh sanction sought is more than a stretch.

***Second***, there is no merit to the State's contention that AbbVie offended the "spirit" of the Rules or otherwise "sandbag[ged]" the State by delaying its expert reports. *Id.* at 4–5. AbbVie has litigated at an urgent pace from the very start of this litigation. (Recall

that AbbVie sued on June 12—less than two weeks after Colorado enacted the law at issue—and moved for a preliminary injunction just one day later. *See* Dkt. Nos. 1, 7.)

By the same token, AbbVie has been completely transparent about its intent to potentially elicit expert evidence depending on what the State disputed in its response brief. Consider AbbVie's formal request for an evidentiary hearing. Dkt. No. 31. AbbVie made that filing on July 2 (the date set by this Court's scheduling order, Dkt. No. 22)—over a week *before* the State's response brief was due. Despite lacking knowledge about what the State would choose to dispute, AbbVie went out of its way to identify and describe its potential witnesses: AbbVie disclosed that it anticipated calling three witnesses, *including two expert witnesses*. Dkt. No. 31 at 2. AbbVie further disclosed that those "two expert witnesses, both with special expertise in healthcare economics, would testify about how S.B. 71's provisions fail to serve any public purpose—testimony key to AbbVie's takings claim. Such testimony is highly relevant both to AbbVie's substantive claims and the balancing of the equities." *Id.* And AbbVie added that the necessity of expert (and other) testimony depended on the contents of the State's forthcoming response brief. *Id.*

That AbbVie followed through with its telegraphed course of action hardly counts as the sort of unfair "surprise" that expert-disclosure rules are designed to prevent. Mot. at 5; *Ramos v. Banner Health*, 426 F. Supp. 3d 815, 818–19 (D. Colo. 2019) (citation omitted). As explained above, the State's subsequent July 11 response brief *did* dispute AbbVie's position that S.B. 71 fails to assist needy patients in Colorado or otherwise promote a public interest. So, as forecasted, AbbVie promptly provided two expert reports

on that topic with its July 21 reply brief. Such conduct cannot possibly be "gamesmanship" or an attempt to "sneak[] expert opinions into its Reply," let alone sanctionable "bad faith." Mot. at 3–4, 7. AbbVie provided its expert reports as soon as they were ready, and on a timeline appropriate for the exigencies of preliminary injunction practice.

***Third***, the State cannot point to *any* prejudice stemming from the timing of disclosure, let alone prejudice worthy of striking the expert witnesses altogether. The State's motion complains about the rigors of responding to AbbVie's experts and retaining rebuttal experts in the ten days between receiving the reports and the then-scheduled August 1 evidentiary hearing. Mot. at 6–8. But such concerns are now moot: The August 1 evidentiary hearing has since been postponed until the parties can confer on a date. And, because of scheduling difficulties on the State's end, the hearing likely will not occur until late August at the earliest—well after Colorado's law has gone into effect, despite AbbVie's prompt motions practice. *See* Ex. 1. The State will have a whole month (or more) between receiving AbbVie's expert reports and the rescheduled evidentiary hearing. That is plenty of time to prepare, especially in light of the inherent speed of preliminary injunction litigation. What is more, AbbVie has already informed the State that it is welcome to retain and disclose its own expert or experts if it so chooses. *Id.*

The State fares no better by claiming that AbbVie caused prejudice by denying the State an opportunity to depose Dr. Chandra and Dr. Chen. Mot. at 6, 7–8. Almost immediately after the State filed its motion, AbbVie expressly offered to make its experts available in Denver for depositions on August 1. The State refused that offer, so it can

hardly claim prejudice now. Importantly, those proposed depositions would have occurred on a date that had already been set aside for the hearing, in a city convenient for the State's lawyers, and with more than a week of time for the State to prepare. *See* Ex. 1. That the State declined such an opportunity only underscores both the unreasonableness of its position and the baselessness of this motion.

## CONCLUSION

The Court should deny the State's motion to strike.

Dated: July 28, 2025

Respectfully submitted,

*/s/ Matthew S. Owen, P.C.*
Matthew S. Owen, P.C.
Meredith M. Pohl
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 389-5000
Email: matt.owen@kirkland.com
meredith.pohl@kirkland.com

Theresa Wardon Benz
Tess Hand-Bender
Tara Leesar
DAVIS GRAHAM & STUBBS
3400 Walnut Street, Suite 700
Denver, CO 80205
Telephone: (303) 892-7388
Email: theresa.benz@davisgraham.com
tess.hand-bender@davisgraham.com
tara.leesar@davisgraham.com

*Counsel for Plaintiffs*