IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-01847-WJM-KAS

ABBVIE INC.; ALLERGAN, INC.; DURATA THERAPEUTICS, INC.; ABBVIE PRODUCTS LLC; PHARMACYCLICS LLC; and ALLERGAN SALES, LLC,

Plaintiffs,

v.

PHILIP WEISER, in his official capacity as Attorney General of the State of Colorado; and KRISTEN WOLF, RYAN LEYLAND, PATRICIA EVACKO, AVANI SONI, MICHAEL SCRUGGS, ALEXANDRA ZUCCARELLI, and JAYANT PATEL, in their official capacities as Members of the Colorado State Board of Pharmacy,

Defendants.

**DECLARATIONS OF
Mr. KEVIN FORBUSH and Mr. KEVIN STANSBURY [Dkt. No. 77]**

Pursuant to this Court's Order granting Defendants leave to file Declarations of Mr. Kevin Stansbury and Mr. Kevin Forbush as one separate docket entry [Dkt. No. 76], Defendants hereby submit those Declarations, below.

Dated this 4th day of September, 2025.

                                              Respectfully submitted,

                                              PHILIP J. WEISER
                                              Attorney General

                                              <u>s/ Joseph G. Michaels</u>
                                              Joseph G. Michaels
                                              Assistant Solicitor General
                                              Jennifer H. Hunt
                                              Senior Assistant Attorney General
                                              Lily Nierenberg
                                              Senior Assistant Attorney General
                                              Robin Alexander
                                              Assistant Attorney General

Colorado Dep't of Law
Ralph L. Carr
Colorado Judicial Center
1300 Broadway, 8th Floor
Denver, CO 80203
Telephone: 720-508-6460 (Michaels)
720-508-6215 (Hunt)
720-508-5851 (Nierenberg)
720-508-6229 (Alexander)
Email: joseph.michaels@coag.gov
jennifer.hunt@coag.gov
lily.nierenberg@coag.gov
robin.alexander@coag.gov
*Attorneys for Defendant Philip J. Weiser*

s/ Jennifer Johnson
Jennifer Johnson
Second Assistant Attorney General
Zach Fitzgerald
Assistant Attorney General
Colorado Dep't of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 8th Floor
Denver, CO 80203
Telephone: 720-508-6379 (Johnson)
720-508-6429 (Fitzgerald)
Email: jennifer.johnson@coag.gov
*zach.fitzgerald@coag.gov*
*Attorneys for Defendants Kristen Wolf, Ryan Leyland, Patricia Evacko, Avani Soni, Michael Scruggs, Alexandra Zuccarelli, and Jayant Patel*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-01847-WJM-KAS
ABBVIE INC.;
ALLERGAN, INC.;
DURATA THERAPEUTICS, INC.;
ABBVIE PRODUCTS LLC;
PHARMACYCLICS LLC;
and ALLERGAN SALES, LLC,

Plaintiffs,

v.

PHILIP WEISER,
in his official capacity as Attorney General of the State of Colorado; and
KRISTEN WOLF,
RYAN LEYLAND,
PATRICIA EVACKO,
AVANI SONI,
MICHAEL SCRUGGS,
ALEXANDRA ZUCCARELLI, and
JAYANT PATEL,
in their official capacities as Members of the Colorado State Board of Pharmacy,

Defendants.

## DECLARATION OF KEVIN FORBUSH, PharmD, BCPS,

I, Kevin Forbush, PharmD, BCPS, declare as follows:

1. I am a licensed pharmacist in the State of Utah (License #11393649-1701) and the State of Maine (License #PR5411), a Doctor of Pharmacy, and a Board-Certified Pharmacotherapy Specialist. I am currently employed by Intermountain Health (IH) as the System Director of the 340B Pricing Program, a position I have held since 2021.

2. I have personal knowledge of the matters set forth in this Declaration and am competent to testify to them.

3. I earned my Doctor of Pharmacy (PharmD) from the University of Rhode Island in 2006. Since 2014, I have worked in hospital settings leading 340B program compliance. I have successfully supported my organizations through six (6) 340B Program audits conducted by the U.S. Health Resources and Services Administration (HRSA), with only one database error finding across all six audits.

4. I oversee 340B Program compliance for five (5) 340B-qualified covered entities in Colorado, including:

- Intermountain Health Lutheran Hospital, a Disproportionate Share Hospital
- Intermountain Health Platte Valley Hospital, a Disproportionate Share Hospital
- Intermountain Health Saint Joseph Hospital a Disproportionate Share Hospital
- Intermountain Health Saint Mary's Regional Hospital, a Disproportionate Share Hospital
- Intermountain Health Saint Mary's Hospital and Medical Center - a Ryan White Part C HIV Clinic

5. These non-profit, safety-net hospitals and federal grantees provide healthcare and critical services to low-income and vulnerable populations, regardless of ability to pay. As Disproportionate Share Hospitals, and a federal grantee health clinic, these hospitals serve vulnerable communities and a disproportionately high number of Medicare and Medicaid beneficiaries.

6. IH hospitals operate a financial assistance program under which:

- Patients earning less than 250% of the Federal Poverty Level (FPL) are eligible for fully discounted care.

2

- Patients earning between 250% and 500% of the FPL are eligible for partially discounted care.

These discounts are supported in part by savings from the 340B drug pricing program.

7. Although federal law does not require 340B covered entities to pass drug discounts directly to eligible patients, IH 340B entities do so, ensuring that financially qualified patients benefit directly from the 340B program through discounts on medications dispensed at contracted pharmacies.

8. In my role, I manage IH's administration of the federal 340B drug program, including oversight of IH's contractual relationships with a range of pharmacies—retail chains, independent pharmacies, and specialty pharmacies. (Specialty pharmacies focus on high-cost, high-touch therapies for complex conditions such as cancer, multiple sclerosis, HIV, Hepatitis C, rheumatoid arthritis, and cystic fibrosis.)

9. IH contractually requires all contract pharmacies to comply with federal 340B laws and regulations, including prohibitions on duplicative discounts, rebates, and unauthorized diversion of 340B drugs.

10. IH conducts monthly internal audits and commissions annual external audits to ensure compliance with all 340B program requirements.  Issues identified through these audits are promptly self-reported by the covered entity and resolved in good faith with manufacturers.  Contract pharmacy claims are routinely reviewed as part of these audits.

11. Since 2020, pharmaceutical manufacturers have increasingly imposed restrictions on the delivery of 340B drugs to contract pharmacies. As of this writing, 40

3

manufacturers, including AbbVie, have implemented such restrictions via 'manufacturer policies'. Although there is no single authoritative source for manufacturers' policies, a website maintained by wholesaler AmerisourceBergen shows that manufacturers have published or revised their policies 196 times since 2020, 100 of which occurred in 2024 alone[1].

12. I am listed as primary contact for IH's Colorado covered entities on AbbVie's contracted vendor, Second Sight Solutions dba 340B ESP (vendor), who issues notices and monitors compliance with AbbVie's contract pharmacy policy. Additionally, a member of my team is listed on the HRSA OPA database as the Primary Contact for each of the Colorado 340B covered entities. Since AbbVie's policy first went into effect on February 1, 2022, it has changed its policy at least eight times. AbbVie and other manufacturers used to email their policies directly to covered entities, but many no longer do so. For instance, AbbVie never notified me that it would no longer permit Critical Access Hospitals, Sole Community Hospitals, and Rural Referral Centers to purchase "orphan drugs" at the 340B price at contract pharmacies or otherwise. It made this change on August 1, 2024, and I learned about it through IH's wholesaler through a regular quarterly communication several months later. Since AbbVie and other manufacturers no longer notify covered entities when they change their policies, members of my team now check the Internet for these updates once each week.

---

[1] Analysis of AmerisourceBergen, *340B Manufacturer Updates* (https://www.amerisourcebergen.com/provider-solutions/hospitals-and-health-systems/340b-manufacturer-updates) (last accessed May 7, 2025).

13. Under the current iteration of its policy AbbVie limits each covered entity in Colorado to one designated contract pharmacy.  AbbVie requires that the pharmacy be within 40 miles of the covered entity, and it refuses to ship 340B drugs to that pharmacy unless the entity submits patient-specific claims data to a for-profit, third-party vendor chosen by AbbVie.  The vendor's data-upload software includes nonnegotiable, problematic terms and conditions.  For instance, the terms ostensibly permit the vendor to revoke access to the software at any time and cap the vendor's liability for damages at $100.00[2].

14. Tracking and responding to each manufacturer's 340B shipment policy imposes a substantial burden on IH.  We have assembled a multidisciplinary team including personnel from pharmacy, compliance, and supply chain personnel, as well as in-house and outside attorneys in support of this work.  This team has spent countless hours over the last five years tracking, assessing, and responding to manufacturers' unilateral policies.  In addition, these policies have created so much administrative burden that we have hired a pharmacy technician specialist to manage our submission of data to the vendor chosen by AbbVie and others.  Finally, since AbbVie and other manufacturers only permit a covered entity to receive 340B drugs at one contract pharmacy, IH has terminated longstanding contractual relationships with community and specialty pharmacies because of the inability to access 340B drugs.  All these changes divert money away from patient care.

---

[2] Second Sight Solutions, LLC, *340B ESP<sup>TM</sup> Covered Entity Portal Terms of Use* (Oct. 4, 2024) (https://340besp.com/terms-of-use) (last accessed May 7, 2025).

15. The limitations on delivery and distribution of 340B covered drugs imposed by AbbVie and other pharmaceutical manufacturers has other significant consequences for IH covered entities and its patients, too. For instance, not every pharmacy carries every drug. Some high-cost, high-touch drugs are only available through "specialty pharmacies," which typically ship the patients' drugs by mail. IH itself operates a specialty pharmacy in Denver, Colorado, but because of AbbVie's 40-mile restriction, it refuses to ship 340B drugs to these pharmacies for patients who receive care at Intermountain Health Saint Mary's Regional Hospital in Grand Junction, CO. A patient could still choose to have their drug dispensed through the IH specialty pharmacy, and IH would continue to offer the patient discounts under our financial assistance policy, but instead of acquiring the drug at the 340B price through the patient's hospital, the pharmacy (and indirectly IH) would spend more on the drug purchased at the non-340B price.

16. By requiring IH to choose a single contract pharmacy for its entities, AbbVie and other manufacturers force IH into trade-offs. If we choose a local corner-store pharmacy, then we are not serving patients who need specialty drugs or lack reliable transportation. If we choose a mail-order pharmacy, we are not serving patients who lack stable housing or simply may not be home to accept delivery if a signature is required. If we choose a specialty pharmacy or home infusion pharmacy, we are not serving patients prescribed less costly, easier to administer medications.

6

18. IH uses 340B savings to support a range of services aligned with the program's intent to "Stretch scarce federal resources as far as possible, reaching more eligible patients and providing more comprehensive services[3]" including:

Uncompensated and charity care

   - Financial assistance

   - Medication copay assistance

   - Care navigation services

   - Ambulatory pharmacy services

19. IH covered entities serve some of Colorado's most vulnerable populations. Without 340B savings, IH would be forced to significantly reduce services and infrastructure investments.

20. I am aware that Colorado recently enacted Senate Bill 25-071 (SB71) "Prohibit Restrictions on 340B Drugs," to address manufacturer-imposed restrictions on 340B drug delivery. IH strongly supports SB71 as a necessary corrective measure.

     I declare the following under penalty of perjury.

Dated the 7th day of August 2025

*Kevin Forbush*
_____

Kevin Forbush, PharmD, BCPS

---

[3] Health Resources & Services Administration, *340B Drug Pricing Program* (https://www.hrsa.gov/opa/) (last accessed May 6, 2025).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

ABBVIE INC., *et al.*,

   *Plaintiffs*,

   v.

PHILIP WEISER, in his official capacity as
ATTORNEY GENERAL OF THE STATE OF
COLORADO, *et al.*,

   *Defendants*.

Case No. 1:25-cv-01847-WJM-KAS

Judge William J. Martinez

## DECLARATION OF KEVIN STANSBURY

I, Kevin Stansbury, hereby declare as follows:

1. I am the Chief Executive Officer of Lincoln Health, which operates Lincoln Community Hospital and Care Center. I have served in that role since 2014.

2. Including my time as CEO of Lincoln Health, I have served in various positions in healthcare management for over 40 years.

3. Lincoln Community Hospital is located in Hugo, which has a population of less than 1,000 people.

4. Lincoln Community Hospital opened in 1959 and currently serves a catchment area approximately the size of the State of Connecticut. The nearest other hospital is approximately a 75-minute drive away.

5. Lincoln Community Hospital provides a range of programs and services, including: emergency medicine; inpatient hospital services; home health and hospice; cancer infusion services; behavioral health; and primary care. Patients would have to travel long distances to access these services if Lincoln Community Hospital could not provide them.

10267436.1

6. Lincoln Health has a payer mix of approximately 50% Medicare, 25% Medicaid 15% Commercial and 10% self pay and miscellaneous. While having some of the lowest charges in the state, Lincoln Health typically writes off approximately 40% of its gross revenue as uncompensated care. Lincoln Health typically operates on a negative operating margin relying on tax revenue, grants, donations and other ancillary revenue to maintain viability. As a result of low margins, Lincoln Health typically operates at less than 50 days cash on hand.

7. Lincoln Community Hospital is a "covered entity" under the federal 340B statute by virtue of its status as a "critical access hospital" and also as a county public hospital owned and operated by a unit of local government, and as such, treats largely a rural/low income population located within designated frontier country.

8. Lincoln Community Hospital generates approximately $500,000 in annual savings through the federal 340B program. These savings help to support the overall financial viability of Lincoln Health and allow it to offer programs like behavioral health, substance abuse, and home health and hospice services.

9. In addition to revenue for Lincoln Community Hospital, the 340B program also generates approximately $700,000-800,000 in savings on prescription drugs that Lincoln Community Hospital passes on directly to its patients through a means-tested discount card program.

10. However, in order to access these savings, as a result of contract pharmacy restrictions imposed by pharmaceutical manufacturers, our patients are forced to choose between one of two local independent pharmacies. This hurdle can impact patient care as it interferes with patients' relationships with their existing pharmacy, which may have a more comprehensive view of a patient's medication history.

11. If not for the contract pharmacy restrictions that manufacturers have imposed over approximately the past five years, I would expect significantly more Lincoln Community Hospital patients to get the benefit of 340B program savings through our discount program. I would also expect an increase in Lincoln Community Hospital's revenue from the 340B program, enabling it to support and expand more services that serve its community.

12. I testified before the General Assembly in favor of SB-71 because of the significant positive impact of the 340B program on Lincoln Community Hospital and its patients, and the significant adverse impact of manufacturers' contract pharmacy restrictions.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  8/28/2025

Kevin M. Stansbury
Chief Executive Officer
Lincoln Health

3