IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-01847-WJM-KAS

ABBVIE INC.; ALLERGAN, INC.; DURATA THERAPEUTICS, INC.; ABBVIE
PRODUCTS LLC; PHARMACYCLICS LLC; and ALLERGAN SALES, LLC,

Plaintiffs,

v.

PHILIP WEISER, in his official capacity as Attorney General of the State of Colorado;
and KRISTEN WOLF, RYAN LEYLAND, PATRICIA EVACKO, AVANI SONI, MICHAEL
SCRUGGS, ALEXANDRA ZUCCARELLI, and JAYANT PATEL, in their official
capacities as Members of the Colorado State Board of Pharmacy,

Defendants.

---

## DEFENDANTS' MOTION TO DISMISS
## PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

---

### D.C.COLO.LCivR 7.1(b)(2) & WJM PRACTICE STANDARD III.D.1 CERTIFICATION

In accordance with D.C.COLO.LCivR 7.1(b)(2) and Civil Practice Standard

III.D.1, undersigned counsel conferred with Plaintiffs' counsel (Ms. Tess Hand-Bender)

by telephone on September 12, 2025, before filing this Motion. After counsel for the

Defendants identified and the parties discussed the bases for this Motion to Dismiss,

the parties agreed that additional amendment of the complaint would not resolve the

Rule 12(b)(1) and 12(b)(6) defenses. Plaintiffs oppose the relief requested.

### INTRODUCTION

AbbVie's issues are with the federal 340B program, not SB25-71. Colorado's

SB25-71 legislation preserves 340B's benefits to underserved populations and rural

healthcare providers, which AbbVie seeks to halt. Although AbbVie complains that 340B

allows healthcare providers and pharmacies to profit while disallowing maximum profits to AbbVie, that is an issue endemic to 340B and not a cause for relief here. AbbVie must seek remedy from the U.S. Congress, not U.S. Courts. This alone robs AbbVie of standing: its injuries stem from 340B, and its asserted injuries are untraceable to SB25-71 and un-redressable by Defendants. Further, AbbVie's hopeful—but unestablished—participation in additional federal drug programs leaves its second claim unripe.

Nor is SB25-71 preempted. The Eighth Circuit recently rejected challenges identical to AbbVie's, holding "the 340B Program is not so pervasive . . . that Congress left no room for the States to supplement it." *Pharm. Rsch. & Mfrs. of Am. v. McClain*, 95 F.4th 1136, 1143 (8th Cir. 2024) (quotation omitted). As AbbVie concedes, because 340B is "silent about delivery," both the D.C. and Third Circuit Courts of Appeals held that pharmaceutical companies may fill those gaps. *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 461 (D.C. Cir. 2024); *Sanofi Aventis U.S. LLC v. U.S. Dep't of Health & Hum. Servs.*, 58 F.4th 696, 703 (3d Cir. 2023). But *Sanofi* and *Johnson* held only that AbbVie *can* gapfill—they did not hold that states *cannot*. AbbVie's attempt to stretch *Sanofi* and *Johnson* past their failure point—i.e., that 340B does not preempt private actors but preempts states on the same topics—should be rejected.

Finally, SB25-71 enacts no taking of AbbVie's property. Colorado is not seizing AbbVie's drugs under SB25-71's authority, and SB25-71's impact stops far short of the bar necessary to trigger a regulatory taking. *Adrus v. Allard*, 444 U.S. 51, 65-66 (1979) (compensation for any diminution in value not required, and where owners possess a "bundle" of property right, full destruction of ne strand is not a taking because aggregate

is viewed in entirety). To agree with AbbVie's taking claim would enact the result against which *Adrus* cautioned: Courts cannot require states to regulate by purchase only. Just because a regulation imposes a cost does not rise to a taking. Thus, AbbVie lacks standing and cannot state a valid takings claim. SB25-71 simply fills 340B's non-preempted gaps to preserve 340B's benefits to Coloradans, and AbbVie's attempt to circumvent the political process to remove those benefits should be dismissed.

## BACKGROUND

Section 340B of the Public Health Service Act, 42 U.S.C. § 256b ("Section 340B"), requires pharmaceutical companies that want to participate in Medicaid and Medicare Part B to offer steep discounts on certain outpatient drugs to "covered entities," including public hospitals, community health centers, and other entities providing care for low-income and rural patients. *Sanofi*, 58 F.4th at 699; *see also* 42 U.S.C. § 256b(b) (defining "covered entity"). This "340B program" helps covered entities provide safety-net medical services to those who have need but do not qualify for Medicaid. *See Astra USA, Inc. v. Santa Clara Cnty.*, *Cal.*, 563 U.S. 110, 113 (2011). The 340B program is administered by the Secretary of Health and Human Services ("HHS") and overseen by HHS's Health Resources and Services Administration" ("HRSA").

"Covered entities may only prescribe 340B discounted drugs to patients who qualify and may not request or receive duplicative 340B discounts and Medicaid rebates for the same drug." *McClain*, 95 F.4th at 1141-42 (citing 42 U.S.C. § 256b(a)(5)(A)-(B)), *cert. denied*, 145 S. Ct. 768 (2024). "[C]overed entities may not engage in diversion of covered outpatient drugs through 'resell[ing] or otherwise transfer[ring] the drug to a

person who is not a patient of the entity.'" *Id*. at 1142 (quoting 42 U.S.C. § 256b(a)(5)(B)). Covered entities may either dispense 340B drugs directly through in-house pharmacies or enter contract with commercial pharmacies to provide drugs on their behalf. Because pharmacy construction and operations are expensive and require special expertise, many 340B-covered entities cannot afford to have their own in-house pharmacies. 1996 HRSA Guidance, 61 Fed. Reg. 43549, 43550 (Aug. 23, 1996). And providers with large service areas, often in rural areas, must rely on contract pharmacies that are accessible where the providers' patients reside.

As covered entities increased their contract pharmacy use to expand their discounted drug provision to eligible patients, pharmaceutical companies (including AbbVie)[1] responded by restricting covered entities from contracting with outside pharmacies for 340B drug dispensation, citing concerns about diversion and double discounting (despite the federal statute prohibiting this and providing avenues of relief). *See Sanofi*, 58 F.4th at 700. These limitations "caused covered entities dependent on contract pharmacies to become unable to serve patients in need." *McClain*, 95 F.4th at 1139. HHS's attempts to prohibit these restrictions failed in federal courts, which held that the 340B statute is "silent about delivery" and so does not require drug companies to deliver drugs to an unlimited number of contract pharmacies. *See Sanofi*, 58 F.4th at 703; *accord Johnson*, 102 F.4th at 461.

---

[1] All plaintiff-entities fall under AbbVie's corporate umbrella, so this Motion uses "AbbVie" to refer to all plaintiffs together.

4

Following these rulings, states started filling this gap in federal law to ensure
covered entities in their states could provide 340B drugs to all eligible patients. In 2025,
the Colorado General Assembly enacted the Colorado 340B Contract Pharmacy
Protection Act ("SB25-71"), which prohibits a manufacturer, third-party logistics provider,
or repackager from directly or indirectly denying, restricting, prohibiting, discriminating
against, or otherwise limiting the acquisition of a 340B drug by, or delivery of a 340B
drug to, a covered entity, a pharmacy contracted with a covered entity, or a location
otherwise authorized by a covered entity to receive and dispense 340B drugs. Colo.
Rev. Stat. § 6-29-105(1)(a). It also prohibits a manufacturer from directly or indirectly
requiring a covered entity, a pharmacy contracted with a covered entity, or any other
location authorized to receive 340B drugs, to submit any health information, claims or
utilization data, purchasing data, payment data, or other specified data that does not
relate to a claim submitted to certain federal health care programs, unless the data is
voluntarily furnished or required to be furnished under federal law. § 6-29-105(1)(b). A
violation of SB25-71 is an unfair or deceptive trade practice under the Colorado
Consumer Protection Act ("CCPA"), and the violator is subject to the CCPA's
enforcement and penalty provisions. § 6-29-105(3)(a). Additionally, a person regulated
by Colorado's State Board of Pharmacy who violates the CCPA provisions may be
subject to Pharmacy Board discipline. § 6-29-105(3)(d).

In short, SB25-71 addresses exactly what manufacturers said the 340B
framework did not: it regulates delivery of 340B drugs. Much of the ground Plaintiffs
seek to cover has already been trod. AbbVie and other manufacturers have brought

claims in multiple states challenging these laws, routinely on preemption and takings

grounds, as AbbVie does here. With one exception, all courts have denied these claims.

## LEGAL STANDARDS

**Fed. R. Civ. P. 12(b)(1).** Federal courts "possess only that power authorized by

Constitution and statute, . . . which is not to be expanded by judicial decree." *Kokkonen*

*v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). "A court

lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of

the proceedings in which it becomes apparent that jurisdiction is lacking." *Caballero v.*

*Fuerzas Armadas Revolucionarias de Colom.*, 945 F.3d 1270, 1273 (10th Cir. 2019)

(citations omitted). Jurisdictional challenges "should be resolved at the earliest stages of

litigation" to conserve time and resources. *Burkitt v. Pomeroy*, No. 15-cv-02386, 2016

WL 696107, at *1 (D. Colo. Feb. 22, 2016) (unpublished) (collecting cases); *see In re*

*Yellow Cab Co-op. Ass'n*, 132 F.3d 591, 594 (10th Cir. 1997) (standing is threshold

jurisdictional issue).

**Fed. R. Civ. P. 12(b)(6).** "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

The allegations must allow "the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged," *id.* and "raise a right to relief above the

speculative level," *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191

(10th Cir. 2009).

## ARGUMENT

I.    **This court lacks subject matter jurisdiction over AbbVie's claims.**

    A.    **AbbVie lacks standing because it cannot establish that SB25-71 is the cause of its alleged injury in fact.**

Federal courts are not forums "to press general complaints about the way in which government goes about its business." *Allen v. Wright*, 468 U.S. 737, 760 (1984) (quotations omitted). Article III courts only have jurisdiction to hear certain "cases" and "controversies." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014); see U.S. Const. art. III, § 2, cl. 1. Standing is jurisdictional. *Lujan, v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Citizen Ctr. v. Gessler*, 770 F.3d 900, 906 (10th Cir. 2014). To establish standing, AbbVie must allege facts sufficient to establish that that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins,* 578 U.S. 330, 338 (2016) (citation omitted). AbbVie must clearly allege facts demonstrating each element of standing. *Id*.; *see also Lujan*, 504 U.S. at 561 ("The party invoking federal jurisdiction bears the burden of establishing" standing.). Because this case involves multiple defendants and claims, AbbVie must prove standing for each claim. *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007). AbbVie has not sufficiently pled that its alleged injuries are fairly traceable to SB25-71.

AbbVie contends SB25-71 requires it to transfer title of discounted drugs directly to contract pharmacies. Dkt. No. 43, ¶¶ 12-13. However, SB25-71 does not apply to the kind of transfer AbbVie complains about, specifically prohibiting receipt of 340B drugs that "is prohibited by the federal department of health and human services[.]" § 6-29-

105(1)(a). Section 340B only allows 340B-drug transfers to a covered entity or a covered entity's patient. *See* 42 USCA § 256b(a)(5)(B) ("With respect to any covered outpatient drug that is subject to an agreement under this subsection, a covered entity shall not resell or otherwise transfer the drug to a person who is not a patient of the entity"). Thus, a 340B-drug title transfer from a manufacturer to a contract pharmacy falls within the SB25-71 exception. To the extent such transfers occur, they are neither caused nor authorized by SB25-71. In this respect, to the extent AbbVie has suffered an injury-in-fact, AbbVie has not sufficiently alleged—nor can it allege—that such injury is fairly traceable to SB25-71 or that a favorable decision would remedy the injury.

Next, AbbVie alleges that SB25-71 will increase transactions barred by Section 340B, i.e., diversion, duplicate discounts, and rebates. Dkt. No. 43, ¶¶ 45-47, 106, 150, 159. AbbVie, however, fails to identify any language in SB25-71 that either authorizes or causes prohibited transactions. Such language does not exist. The transactions that offend AbbVie stem from 340B itself—not SB25-71. So, again, any injury is untraceable to SB25-71, nor would an injunction striking down SB25-71 help.

AbbVie contends SB25-71 will increase the volume of drugs it will have to sell at a discounted price, resulting in financial loss. This is incorrect. SB25-71 increases neither the number of covered entities that qualify under the 340B program nor the number of patients entitled to receive 340B medications. It only prevents manufacturers from restricting the pharmacies at which such patients can purchase and collect 340B medications. In other words, SB25-71 does not require AbbVie to sell more drugs than it

was previously required to sell under the 340B program. Consequently, any loss AbbVie may suffer is caused by 340B, not SB25-71, and any injury is not traceable to SB25-71.

Finally, AbbVie contends SB25-71 limits its access to federal tools for combatting improper use of 340B medications, including diversion and duplicate discounts or rebates. But SB25-71's language contradicts this concern. While SB25-71 precludes AbbVie from conditioning sales and delivery of 340B drugs on a covered entity's agreement to provide certain data, it does not preclude AbbVie from using Section 340B's audit process and attendant regulations. *See* § 6-29-105(1)(b) (excluding federally required data from request prohibition); § 6-29-105(5); *see also* 42 U.S.C. § 256(a)(5)(C) (setting out manufacturer's right to request an audit of a covered entity); Manufacturer Audit Guidelines and Dispute Resolution Process, 61 Fed. Reg. 65406-07 (Dec. 12, 1996). Consequently, SB25-71 does not impose an injury-in-fact, nothing is traceable to SB25-71, and a decision on this claim would not impact this allegation. *See AbbVie Inc. v. Bailey*, No. 4:24-cv-00996, 2025 WL 1918948, at *7-8 (W.D. Mo. July 11, 2025) (recognizing same for analogous Missouri law). And any action by contract pharmacies repurposing 340B drugs through the replenishment model is a violation of 340B, not SB25-71; thus, any financial loss comes either from Section 340B itself or from illegal transfers of 340B drugs, but *not* from SB25-71 which neither requires nor permits illegal transfers of 340B drugs. *Id*. at *8 ("[I]f the federal government banned the replenishment model, and [SB25-71] remained in effect, AbbVie would suffer no damages. However, if [SB25-71] were repealed but the replenishment model were still allowed, AbbVie would continue to suffer the exact same damages it complains of

here."). AbbVie cannot establish injury-in-fact traceable to the State Officials that an injunction by this Court would remedy. *See id.*

### B.    AbbVie's Second Claim for Relief is not ripe and AbbVie cannot establish standing to pursue it.

"[W]hether a claim is ripe for review bears on a court's subject matter jurisdiction." *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1498 (10th Cir. 1995). "[T]he central focus is on whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* at 1499 (quotation omitted).

AbbVie's Second Claim for Relief relies on its uncertain expectation of participation in HRSA's 340B Rebate Model Pilot Program ("Pilot Program"). *See* Dkt. No. 43, ¶¶ 167-73. But the Pilot Program does not start until January 2026. *See* 340B Program Notice: Application Process for the 340B Rebate Model Pilot Program, 90 Fed. Reg. 36164 (Aug. 1, 2025). The comment period just concluded on September 2, 2025. *Id.* at 36163. AbbVie has not yet applied to participate. *See* Dkt. No. 43, ¶ 169. Applications will not be approved until mid-October. *See* 90 Fed. Reg. 36164. Thus, this claim is unripe because AbbVie is not currently participating in the Pilot Program and it is uncertain whether it will. Nor, as explained below, would AbbVie suffer hardship without court intervention. *See Morgan v. McCotter*, 365 F.3d 882, 890 (10th Cir. 2004) (hardship to parties absent a court ruling is a proper consideration for ripeness).

For similar reasons, AbbVie can articulate no injury-in-fact or harm to establish standing. "Standing is determined at the time the action is brought, and [courts] generally look to when the complaint was first filed, not to subsequent events." *Mink v.*

*Suthers*, 482 F.3d 1244, 1253-54 (10th Cir. 2007) (citation omitted); *see also Prairie Prot. Colo. v. USDA Aphis Wildlife Servs.*, No. 19-cv-2537, 2020 WL 3469712, at *8-9 (D. Colo. June 25, 2020) (standing for a new claim assessed at the time that amended complaint is raised); *cf. S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013) (courts examine amended complaint in assessing plaintiff's claims, including for standing, but assess standing from when original complaint was filed). As detailed above, AbbVie's allegations fail to support standing for its Pilot Program claim because AbbVie is not in the Program, nor is the program even underway. *See Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 109 (10th Cir. 2024) (injury-in-fact must be both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"— it must exist and be real, not abstract (citations and quotations omitted)). "[A]llegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citations and internal quotation marks omitted). And, as discussed below, there is no injury-in-fact—even assuming AbbVie eventually participates in the Program—because SB25-71's plain language does not conflict with the Pilot Program such that it would prevent AbbVie's involvement. *See* Sec. II.B.3, *infra*.

## II.    AbbVie fails to state a plausible preemption claim.

To maintain its claims that federal law preempts SB25-71, AbbVie "bears the burden of showing with specificity that Congress intended to preempt state law." *Day v. SkyWest Airlines*, 45 F.4th 1181, 1184 (10th Cir. 2022) (cleaned up). It must overcome the presumption that state statutes are constitutional. *Gillmor v. Thomas*, 490 F.3d 791, 798 (10th Cir. 2007). It also must overcome the presumption against preemption

applicable to "state or local regulation of matters related to health and safety," such as regulations impacting pharmacies and drugs sales like SB25-71. *Hillsborough Cnty, Fla. v. Automated Med. Lab'ys*, 471 U.S. 70, 715 (1985); *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (in "matters of health," states have "historic primacy" of regulation); *Moore v. Dist. Ct.*, 518 P.2d 948, 952 (Colo. 1974) (principle "universally recognized" that "state has authority under the police power for the protection of the public health and welfare to regulate the practice of pharmacy and the sale of drugs"); *accord Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (state's police powers not to be superseded by federal act absent "clear and manifest purpose of Congress") (citation omitted). The 340B statute lacks express preemption language, and AbbVie cannot show that, in enacting Section 340B, Congress had the "clear and manifest purpose" to supersede "the historic police powers of the States" to regulate public health and welfare. *Ramsey Winch Inc. v. Henry*, 555 F.3d 1199, 1204 (10th Cir. 2009) (cleaned up). Indeed, SB25-71 explicitly states nothing in the bill is to be construed or applied to conflict with federal law. *See* § 6-29-105(4). Thus, AbbVie's preemption claim fails as a matter of law.

### A.    SB25-71 is not field preempted.

Field preemption exists where "a framework of regulation" of a field is "so pervasive" that it leaves no space for state supplementation, or where federal interests are "so dominant" that the federal scheme's existence is "assumed to preclude enforcement of state laws on the same subject." *Bradshaw v. Am. Airlines, Inc.*, 123 F.4th 1168, 1173 (10th Cir. 2024) (quoting *Arizona v. United States*, 567 U.S. 387, 399

(2012) (field preemption occurs where Congress determines field "must be regulated by its exclusive governance")). Because preemption can infringe on state sovereignty, courts "begin with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Mount Olivet Cemetery Ass'n v. Salt Lake City*, 164 F.3d 480, 487 (10th Cir. 1998). Field preemption is "rare." *Kansas v. Garcia*, 589 U.S. 191, 208 (2020).

AbbVie alleges that "[e]very element of the federal 340B program—from eligibility and pricing to compliance and enforcement—is governed by federal law." Dkt. No. 43, ¶ 146. It contends "SB-71 directly intrudes on the federal 340B scheme" and "is a price regulation." *Id.* at ¶ 147. But both AbbVie and SB25-71 seek to regulate 340B-drug *delivery*, not price or eligibility. AbbVie seeks to limit the locations to which it must deliver 340B drugs and impose additional requirements whenever its drugs are delivered to an outside pharmacy. SB25-71 limits manufacturers' ability to impose such restrictions. Both the Third and D.C. Circuit Courts of Appeal have held that the 340B statute is "silent about delivery." *Sanofi*, 58 F.4th at 703; *Johnson*, 102 F.4th at 461.[2] So, there can be no preemption on that ground.

Moreover, the Eighth Circuit, assessing an Arkansas statute strikingly similar to SB25-71, rejected an identical preemption claim, concluding "the 340B Program is not 'so pervasive . . . that Congress left no room for the States to supplement it.'" *McClain*,

---

[2] Indeed, that was precisely what manufacturers argued in federal court. *E.g.*, Novartis Opening Brief, p 4, *Novartis Pharms. Corp. v. Johnson*, No. 21-5299, (D.C. Cir. June 8, 2022), Dkt. No. 1949831 ("Section 340B . . . is silent as to whether manufacturers must deliver those drugs to contract pharmacies.").

95 F.4th at 1143 (quoting *Arizona*, 567 U.S. at 399). Indeed, outside pharmacies "have always been an essential part of the 340B Program" and the program's "silence" regarding drug delivery to patients "contrasts with 340B's provisions that directly address distribution by third-party wholesalers." *Id*. (citing 42 U.S.C. § 256b(a)(8)). Thus, "Congress's decision not to legislate the issue of pharmacy distribution indicates that section *340B is not intended to preempt the field*." *Id*. (emphasis added). The court emphasized that "[p]harmacy has traditionally been regulated at the state level, and we must assume that absent a strong showing that Congress intended preemption, state statutes that impact health and welfare are not preempted." *Id*. at 1144 (citations omitted). Other courts that have addressed the issue agree: Congress did not intend for 340B to preempt the field. *E.g.*, *AbbVie Inc. v. Skrmetti*, No. 3:25-cv-00519, 2025 WL 1805271, at *12-13 (M.D. Tenn. June 30, 2025); *AstraZeneca Pharm. v. Bailey*, No. 2:24-cv-04143, 2025 WL 644281, at *5 (W.D. Mo. Feb. 27, 2025); *AstraZeneca Pharm. v. Fitch*, 766 F. Supp. 3d 657, 665 (S.D. Miss. Dec. 3, 2024); *Pharm. Rsch. & Mfrs. of Am. v. Murrill*, 2024 WL 4361597, at *9 (W.D. La. Sept. 30, 2024).

**B.    SB25-71 is not conflict preempted.**

SB25-71 does not materially impede or thwart federal law or policy, thus it is not conflict preempted. *Ramsey Winch*, 555 F.3d at 1204. To establish conflict preemption, AbbVie must demonstrate that: (1) compliance with both federal and state requirements is physically impossible; or (2) SB25-71 stands as an obstacle to the accomplishment and execution of the full purposes and objectives of federal law. *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 918 (10th Cir. 2016) (citations omitted).

The 340B program was enacted so healthcare could "reach[] more eligible patients and provid[e] *more comprehensive services.*" HRSA, Final Rule, 340B Drug Pricing Program; ADR Regulation, 89 Fed. Reg. 28,643, 28,643 (April. 19, 2024) (emphasis added). Far from *conflicting* with 340B, SB25-71 *works with* 340B to provide more comprehensive services and reach more eligible patients. *See McClain*, 95 F.4th at 1144-45 (determining analogous Arkansas statute "assists in fulfilling the purpose of 340B"). Thus, AbbVie can establish neither element of the conflict preemption test.

### 1.    SB25-71 regulates delivery, not pricing, of 340B drugs.

SB25-71 regulates covered entities' relationships with contract pharmacies by precluding manufacturers from interfering with those relationships, for example by limiting how many contract pharmacies a covered entity may partner with to dispense 340B drugs to qualifying patients. § 6-29-105(1)(a) ("manufacturer . . . shall not, directly or indirectly, deny restrict, prohibit . . . or otherwise limit the acquisition of a 340B drug by, or delivery of a 340B drug to, a 340B covered entity, a pharmacy contracted with a 340B covered entity, or a location otherwise authorized by a 340B covered entity"). Put simply, SB25-71 "prohibit[s] [AbbVie] from imposing restrictions on where it is willing to *deliver* drugs that have been purchased by covered entities under the 340B discount. The amount of the discount is not at issue and is not affected by the state scheme." *Skrmetti*, 2025 WL 1805271, at *18.

Like other states' analogous programs, SB25-71 "does not require pharmaceutical manufacturers to offer 340B drugs below applicable ceiling prices, expand the definition of what a 340B healthcare provider is, or expand the remedies

available to a covered entity when a manufacturer overcharges for its 340B drugs."

*AbbVie, Inc. v. Fitch*, 1:24-cv-184, 2024 WL 3503965, at *12 (S.D. Miss. July 22, 2024)

(language from similar law not preempted). Nor does SB25-71 either change any

federal requirements as to what manufacturers may charge for drugs purchased

through the 340B program or alter the requirements for participation in the 340B

program. Finally, SB25-71 explicitly confirms that it should not "be construed or applied

to be in conflict with . . . applicable federal law." § 6-29-105(4)(a). Numerous states

adopted statutes similar to SB25-71 and have faced similar challenges as those AbbVie

makes here. All courts but one have held that the challenged statutory language has

nothing to do with pricing and, therefore, is not preempted by 340B.[3]

AbbVie's contention that SB25-71 regulates pricing relies on its allegation that

"contract pharmacies sell manufacturers['] drugs at regular prices to pharmacy

customers and then demand that their stocks be replenished with drugs purchased by

the covered entity through the federal 340B program at discounted prices." Dkt. No. 43,

¶ 41. But whether 340B drugs purchased by a covered entity are used to replenish or

establish inventory at a contract pharmacy, it is *federal law*—not SB25-71—that dictates

340B-drug *price*, which AbbVie's Amended Complaint expressly recognizes. *See* Dkt.

43, ¶ 148 (stating that SB25-71 defines a 340B drug as a drug subject to "reduced

---

[3] *See McClain*, 95 F.4th at 1146; *Fitch*, 766 F. Supp. 3d at 664-65; *Novartis Pharm. Corp. v. Fitch*, 738 F. Supp. 3d 737, 749-50 (S.D. Miss. 2024); *Skrmetti*, 2025 WL 1805271, at *24; *Novartis Pharms. Corp. v. Bailey*, No. 2:24-cv-04131, 2025 WL 595189, at *3 (W.D. Mo. 2024); *Bailey*, 2025 WL 644285, at *3; *Murrill*, 2024 WL 4361597, at *8-9; *Fitch*, 2024 WL 3503965, at *12; *Pharm. Rsch. & Mfrs. of Am. v. Fitch*, No. 1:24-cv-160, 2024 WL 3277365, at *9 (S.D. Miss. July 1, 2024); *contra Pharm. Rsch. & Mfrs. of Am. v. Morrisey*, 760 F. Supp. 3d 439, 459-460 (S.D. W.Va. 2024).

prices by a manufacturer *pursuant to* [*the 340B program*]" (brackets in Amended
Complaint, emphasis added)). SB25-71 requires only that manufacturers comply with
instructions to deliver 340B drugs to covered entities' pharmacies of choice. *See* § 6-29-
105(1)(a). SB25-71 concerns the *delivery* of covered entities' 340B drugs, which is a
state-fillable gap in Section 340B. *See Sanofi*, 58 F.4th at 703; *Johnson*, 102 F.4th at
461. Therefore, Colorado's regulations protecting covered entities' ability to have their
340B drugs delivered to their contract pharmacies is not preempted by Section 340B.

### 2.    SB25-71's enforcement provisions do not conflict with HHS's enforcement of pricing requirements.

Numerous federal courts have already rejected contentions similar to AbbVie's
allegation that SB25-71 conflicts with Section 340B's federal enforcement process.[4]
Federal enforcement of Section 340B and state enforcement of SB25-71 focus on two
different areas. Federal enforcement covers matters like diversion, duplicate discounts,
and overcharging. 42 U.S.C. §§ 256b(d)(1)(A)-(2)(A). SB25-71 does not address those.
Instead, it prohibits "pharmaceutical manufacturers from interfering with a covered
entity's contract pharmacy arrangements," which "falls outside the purview of 340B."
*McClain*, 95 F.4th at 1145. Any questions about alleged diversion or compliance with
federal pricing requirements are matters for federal enforcement unrelated to SB25-71.
*See* 42 U.S.C. §§ 256b(d)(2)(B)(v), (d)(3); 42 C.F.R. §§ 10.20-10.25. Colorado penalties

---

[4] *McClain*, 95 F.4th at 1144; *Fitch*, 766 F. Supp. 3d at 664-65; *Fitch*, 738 F. Supp. 3d at
751; *Skrmetti*, 2025 WL 180527, at *13, *19; *Bailey*, 2025 WL 595189, at *3; *Murrill*,
2024 WL 4361597, at *8; *Fitch*, 2024 WL 3503965, at *12; *Fitch*, 2024 WL 3277365, at
*11.

for SB25-71 violations thus do not conflict with federal penalties for Section 340B

violations. *See Murrill*, 2024 WL 4361597, at *8.

In short, AbbVie cannot demonstrate that Congress clearly intended to

supersede states' regulatory powers regarding drug manufacturers' conduct impacting

covered entities and their contract pharmacies under the 340B program and, therefore,

AbbVie fails to state a claim for conflict preemption.

### 3.    SB25-71 is not conflict preempted by the Pilot Program.

SB25-71 specifically provides: "A manufacturer shall not directly or indirectly

require . . . a 340B covered entity . . . to submit any health information, claims . . .

*unless such data is* . . . *otherwise required to be furnished under applicable federal law*."

§ 6-26-105(1)(b) (emphasis added). It also provides: "Subsection (1) of this section

does not prohibit a manufacturer from requiring health information or other data that a

covered entity is required to furnish to the manufacturer under applicable federal law[.]"

§ 6-29-105(5). Thus, should AbbVie be accepted into the Pilot Program, and elect to

participate, nothing in SB25-71 precludes AbbVie from requiring covered entities to

provide it with the data outlined in the federal guidance or its approved Pilot Program

plan. *See* 90 Fed. Reg. 36165 (listing fields that may be requested as part of the

manufacturer's Pilot Program plan).

### III.    AbbVie fails to state a claim for a Fifth Amendment Taking.

The Fifth Amendment prohibits a "taking" by the government without just

compensation. *See* U.S. Const., amend. V. The Supreme Court has consistently said

that the Takings Clause is "designed to bar Government from forcing some people

18

alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Penn Cent. Transp. Co. v. New York,* 438 U.S. 104, 123 (1978) (quoting *Armstrong v. United States,* 364 U.S. 40, 49, (1960)).

A taking may come in two different forms: (1) a taking *per se*; or (2) a regulatory taking. A *per se* taking involves the government's physical appropriation of private property for public use. A regulatory taking is a restriction on the use of property that goes "too far." *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). In analyzing the character of an alleged government taking, courts typically look at whether the government has physically invaded or permanently appropriated private assets for its own use. *North Mill Street, LLC v. City of Aspen*, 6 F.4th 1216, 1224 (10th Cir. 2021) (citing *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 538 (2005)). SB25-71 is neither.

### A.    SB25-71 is not a taking *per se*.

A *per se* taking occurs when the government physically appropriates private property for public use. *Horne v. Dep't of Agric.*, 576 U.S. 350, 360 (2015) (citation omitted). In *Horne*, the U.S. Department of Agriculture promulgated a California Raisin Marketing Order, which required raisin growers to set aside a percentage of their crops "for the account of the Government, free of charge." *Id.* at 354. The government "then sells, allocates, or otherwise disposes of the raisins in ways it determines are best suited to maintaining an orderly market." *Id.* The Supreme Court held that the reserve requirement was a "clear physical taking" because "[a]ctual raisins are transferred from the growers to the Government" and "[t]itle to the raisins passes to the Raisin Committee." *Id.* at 361.

The State Officials' actions here differ significantly from the Raisin Committee's in *Horne*. The State Officials do not take title to, or possession and control of, AbbVie's drugs. Nor are they authorized to seize drugs or funds directly from AbbVie to administer the program. Under the 340B program and SB25-71, title to the drugs passes from AbbVie to a covered entity with whom AbbVie contracts, who maintains title to the drugs until they are distributed to the pharmacy to dispense to a patient. The State Officials only become involved if it is alleged that AbbVie violated the statute.

AbbVie claims that SB25-71 deprives it of a portion of its expected income stream in future drug distributions by expanding covered entities' ability to contract with more than one private pharmacy for 340B-drug dispensing. Thus, on its face, SB25-71 adjusts rights for the public good—at the manufacturer's expense to the covered entity's benefit. Courts evaluate similar rights adjustments under a regulatory takings rubric, not *per se* taking. *See Connolly v. Pension Ben. Guar. Corp*, 475 U.S. 211, 222-23 (1986); *Penn. Cent. Transp. Co.*, 438 U.S. at 124 (1978) ("A 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government . . . than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." (internal citations omitted)). SB25-71 is not a taking *per se*.

**B.      SB25-71 is not a regulatory taking.**

The creation of a statutory liability to a private party does not automatically constitute an uncompensated taking prohibited by the Fifth Amendment. *Connolly*, 475 U.S. at 222-23. Rather, a regulatory taking occurs when a regulation "goes too far" in

limiting an owner's use of property. *Penn. Coal*, 260 U.S. at 415. As the Supreme Court

explained in *Adrus*, "government regulation—by definition—involves the adjustment of

rights for the public good" and, while "this adjustment curtails some potential for the use

or economic exploitation of private property[, t]o require compensation in all such

circumstances would effectively compel the government to regulate *by purchase*." 444

U.S. at 65 (emphasis added). The *Andrus* Court recognized that "Government hardly

could go on if to some extent values incident to property could not be diminished without

paying for every such change in the general law." *Id*. (citation omitted). Accordingly, "a

party challenging governmental action as an unconstitutional taking bears a substantial

burden." *E. Enters. v. Apfel*, 524 U.S. 498, 523 (1998).

In determining whether a regulatory taking has occurred, courts focus their

analysis on whether the regulation effects something similar in kind to a physical taking.

*See Penn Cent.*, 438 U.S. at 124. A court must consider three factors with "particular

significance" in determining whether a regulatory taking has occurred: (1) the "economic

impact of the regulation on the claimant," (2) "the extent to which the regulation has

interfered with distinct investment-backed expectations," and (3) "the character of the

governmental action." *Id*. Each factor weighs in favor of the State Officials.

      **1.**    **AbbVie cannot demonstrate that the economic impact of SB25-71
constitutes a taking.**

The Amended Complaint lacks factual allegations from which this Court could

reasonably evaluate SB25-71's economic impact on AbbVie. AbbVie contends SB25-71

"mandates that pharmaceutical manufacturers provide 340B-priced drugs at below-

market prices, depriving them of control over their own pricing structures and revenue,"

and that it "imposes significant financial losses on AbbVie and other manufacturers."
Dkt. No. 43, ¶ 184. This Court need not accept AbbVie's conclusory allegations of
economic impact as true for purposes of evaluating this Motion. *Hall v. Bellmon*, 935
F.2d 1106, 1110 (10th Cir. 1991) ("[I]n analyzing the sufficiency of the plaintiff's
complaint, the court need accept as true only the plaintiff's well-pleaded factual
contentions, not his conclusory allegations."). Regardless, in evaluating a regulation's
economic impact, courts look at the diminution in value that a plaintiff will experience
due to the regulation. *See Penn Cent.*, 438 U.S. at 131. AbbVie has not alleged facts
establishing diminution in value of its drugs sold in Colorado.

Additionally, a court must "compare the value that has been taken from the
property with the value that remains in the property." *Keystone Bituminous Coal Ass'n v.
DeBenedictis*, 480 U.S. 470, 497 (1987). In *Connolly*, the Supreme Court, applying the
regulatory takings test, considered the fact that the withdrawal liability assessed against
employers contributing to multiemployer pension plans was roughly proportional to the
employer's plan contributions, and thus, supported the conclusion that no regulatory
taking occurred; the liability assessment was "not made in a vacuum." 475 U.S. at 225.
AbbVie does not allege that the financial benefit it receives through its Colorado drug
sales will be exceeded by its statutory liability under SB25-71. Nor does it allege
anything showing that the reasonably estimated size of its liability is disproportionate to
the legitimate obligations society may impose on individual entities. Because AbbVie
fails to allege any facts allowing for a reasonable inference that it will suffer a significant
economic impact because of SB25-71, this factor weighs in favor of the State Officials.

2.      **AbbVie cannot demonstrate that SB25-71 interferes with its reasonable investment-backed expectations.**

As a participant in the closely regulated pharmaceutical industry, AbbVie cannot have distinct investment-backed expectations that rely upon a legislative and regulatory status quo. *See Lucas v. S.C. Coastal Couns.*, 505 U.S. 1003, 1027-28 (1992) (owner of personal property subject to close State regulation, "ought to be aware of the possibility that new regulation might even render his property economically worthless"); *Fed. Hous. Admin. v. Darlington, Inc.,* 358 U.S. 84, 91 (1958) ("Those who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end."); *Cal. Hous. Sec., Inc. v. United States,* 959 F.2d 955, 960 (Fed. Cir. 1992) ("The instant case involves a regulatory action in a highly regulated industry in which the government took actions that reasonably should have been expected by plaintiffs") (quotation marks and citation omitted)), *cert. denied,* 506 U.S. 916 (1992); *accord Appolo Fuels, Inc. v. United States*, 381 F.3d 1338, 1349 (Fed. Cir. 2004) (recognizing importance of "high regulated industry" vis-à-vis party's reasonable expectations). Because AbbVie voluntarily participates in the heavily regulated 340B program, this weighs strongly in favor of the State Officials.

3.      **AbbVie cannot demonstrate that the character of the State Officials' conduct supports a taking.**

A taking is more likely when government interference is a physical invasion than when the interference arises from a public program adjusting economic benefits and burdens to promote the common good. *Penn. Cent.*, 438 U.S. at 124. The State Officials do not "physically invade or permanently appropriate any of [AbbVie's] assets for [their]

own use." *Connolly*, 475 U.S. at 224. Rather, SB25-71 lets a covered entity contract with more than one pharmacy to dispense 340B drugs, increasing the 340B program's reach. Such purpose and effect substantially advance public health and welfare.

As the Supreme Court noted in *Connolly*, "the purpose of forbidding uncompensated takings of private property for public use is to bar Government from forcing some people to alone bear public burdens which, in all fairness and justice, should be borne by the public as a whole." 475 U.S. at 227 (internal quotations omitted). This Court should reject AbbVie's attempt to persuade it that Colorado's effort to ensure that its covered hospitals and clinics can make full use of an existing federal program somehow imposes undue burdens on drug companies. SB25-71 does not impose an undue public burden on drug companies and does not constitute a regulatory taking.

### C.    AbbVie's voluntary participation in 340B precludes its takings claim.

Finally, when private parties "voluntarily accept responsibilities under" federal law because they 'consider it in their best interest to do so," *no taking occurs. Burditt v. U.S. Dep't of Health & Hum. Servs.*, 934 F.2d 1362, 1376 (5th Cir. 1991). When a party voluntary participates, "[g]overnmental regulation that affects [the] group's property interest *does not constitute a taking* of property where the regulated group is not required to participate in the regulated industry" in the first place. *Id.* (emphasis added) (citations and internal quotation marks omitted). This is true even "[d]espite the strong financial inducement to participate" in the government program, including "Medicaid." *Id.* (citing *Minn. Ass'n of Health Care Fac., Inc. v. Minn. Dep't of Pub. Welfare*, 742 F.2d 442, 446 (8th Cir. 1984), *cert. denied*, 469 U.S. 1215 (1985)). Here, AbbVie—

irrespective of any financial inducement—voluntarily chose to participate in the 340B program. Distributing its drugs to covered entities and their contract pharmacies at 340B prices simply does not constitute a taking, even if SB25-71 prevents AbbVie from limiting the number of pharmacies for delivery.

The statute's prohibition on restricting delivery locations of 340B drugs – which will likely increase the number of drugs sold at the discounted rate – does not alter this analysis. AbbVie already signed up for distributing their drugs at discount rates *under the 340B program*. SB25-71 does not change that; it neither compels AbbVie's participation in 340B nor directs it to sell 340B directly to pharmacies. It only requires AbbVie to offer 340B drugs for purchase by covered entities without limiting *delivery*. And by voluntarily accepting the 340B program requirements, AbbVie's takings claim is extinguished because they received the bargained-for benefit of involvement in that program—particularly in a highly regulated industry like pharmaceuticals and health care. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1007 (1984); *see id.* (industry subject to enhanced regulation weighs against finding a regulatory taking). Further, any economic impact of SB25-71 preventing manufacturers from limiting delivery options does not come close to deprive AbbVie of *all* economically beneficial use of their products. *See Lucas*, 505 U.S. at 1019-20.

## CONCLUSION

SB25-71 fills non-preempted gaps in the 340B program. Although AbbVie prefers to fill those gaps itself, that does not rise to cognizable claims. This Court should dismiss AbbVie's complaint for lack of standing and failure to state any plausible claim.

Respectfully submitted this 12th day of
September 2025,

PHILIP J. WEISER
Attorney General

s/ Joseph G. Michaels
Joseph G. Michaels
Assistant Solicitor General
Jennifer H. Hunt
Lily Nierenberg
Senior Assistant Attorneys General
Robin E. Alexander
Assistant Attorney General
Colorado Dep't of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 8th Floor
Denver, CO 80203
Telephone: 720-508-6460 (Michaels)
720-508-6215 (Hunt)
720-508-6851 (Nierenberg)
720-508-6229 (Alexander)
Email: joseph.michaels@coag.gov
        jennifer.hunt@coag.gov
        lily.nierenberg@coag.gov
        robin.alexander@coag.gov
*Attorneys for Defendant Philip J. Weiser*

s/ Jennifer Johnson
Jennifer Johnson
Second Assistant Attorney General
Zach W. Fitzgerald
Assistant Attorney General
Colorado Dep't of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 8th Floor
Denver, CO 80203
Telephone: 720-508-6379 (Johnson)
720-508-6429 (Fitzgerald)
Email: jennifer.johnson@coag.gov
        zach.fitzgerald@coag.gov
*Attorney for Defendants Kristen Wolf, Ryan
Leyland, Patricia Evacko, Avani Soni, Michael*

26

*Scruggs, Alexandra Zuccarelli, and Jayant Patel*